1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         WESTERN DIVISION

3


4
        UNITED STATES OF AMERICA,        Case No. 3:22-cr-00274-JRK-3
5                                        Toledo, Ohio
                  Plaintiff,
6

7           vs.                          Tuesday, October 17, 2023

8

9       ANITA GREEN,

10                   Defendant.

11

12              TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
                BEFORE THE HONORABLE JAMES R. KNEPP II
13                   UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19
        Official Court Reporter:     Stacey L. Kiprotich, RMR, CRR
20                                   United States District Court
                                     1716 Spielbusch Avenue, Suite 120
21                                   Toledo, Ohio 43604
                                     (419) 213-5520
22

23

24

        Proceedings recorded by mechanical stenography, transcript
25      produced by computer-aided transcription.

1    **APPEARANCES:**

2

3    For the Government:        **Alissa M. Sterling,**
                                Office of the U.S. Attorney
4                               Northern District of Ohio
                                Four SeaGate, Suite 308
5                               Toledo, Ohio 43604
                                (419) 250-6376
6                               alissa.sterling@usdoj.gov

7                               **Michelle M. Baeppler,**
                                Office of the U.S. Attorney
8                               Northern District of Ohio
                                801 West Superior Avenue, Suite 401
9                               Cleveland, Ohio 44313
                                (216) 622-3995
10                              michelle.baeppler@usdoj.gov

11

12   For the Defendant:        **Ian N. Friedman,** *Esquire*
                                Friedman & Nemecek
13                              1360 East Ninth Street, Suite 650
                                Cleveland, Ohio 44114
14                              (216)928-7700
                                ecn@fanlegal.com

15

16

17

18

19

20

21

22

23

24

25

1                    **Tuesday, October 17th, 2023**

2                              - - -

3                       **(Afternoon Session)**

4                              - - -

5                    THE COURT:  The next matter before the Court

6     this afternoon is the *United States of America versus*

7     *Anita Green*.  It's Case Number 3:22-cr-274.

8          The matter comes on I believe this afternoon for a

9     change of plea.  We'll see if, in fact, that occurs, but

10    that's why we're all here.

11         Ms. Green is present with us in the courtroom.

12         She's joined at counsel table by Attorney Ian

13    Friedman.

14         And here on behalf of the Government we have AUSAs

15    Sterling and Baeppler.

16         Ms. Green, the entry of a plea, as I'm sure

17    Mr. Friedman told you this, it isn't as simple as me just

18    saying, "Hey, what do you plead?" and you say, "Guilty," and

19    I say, "Okay.  See ya."  It's a little more methodical than

20    that.

21         And let's make sure the red light is on on the little

22    microphone here so we can make sure we hear each other.

23    That will help us a little bit.

24         Just to kind of give you a roadmap of what this is

25    going to look like, Ms. Green, the waypoints along the way

4

1      are:  I have to make sure that you are competent, you know,

2      that you know who you are, where you are, and what's going

3      on here today.

4           I have to make sure that you understand your trial

5      rights, which you're going to have to waive in order to be

6      able to plead guilty.  And the rules actually require that I

7      go through those in a fair amount of specificity.  It is

8      actually called Criminal Rule 11, and it requires that we

9      have -- the lawyer word is a colloquy, but you and I might

10     refer to it as a chat, okay, but we have to talk about the

11     rights that you have under the rules and the Constitution.

12          I have to make sure that you understand fully the

13     nature of the charge to which you are contemplating entering

14     a plea.  So in some respects, it's just like the arraignment

15     was.  In fact, some places they call it a re-arraignment

16     when there's an anticipated guilty plea.

17          And then, finally, I have to make sure that this is

18     being done voluntarily, that there hasn't been some threat

19     made against you or some promise made to you or any other

20     type of duress or influence, other than what gets talked

21     about here in open -- in the courtroom.  So that's the

22     layers of the onion that we're going to go through.

23          And then presumably, when we get to the end and we've

24     covered all of that stuff and I'm satisfied, then, and only

25     then, I'll ask you what is your plea.  And if you want to

1    change it to guilty at that point, you would say, "Guilty."

2         I need you to understand that just because we start

3    this hearing doesn't mean we have to finish it.  If you

4    change your mind between now and when I get to the point and

5    I say, "What is your plea?" we'll stop.  Okay?  Just because

6    the train leaves the station doesn't mean we have to ride it

7    all the way to the next station.  We can stop at any point.

8         I apologize for the yelling going on out there.

9    Normally, that would just be my staff yelling at each other.

10   But, in fact, they're building a new courthouse there, which

11   at some point will be very nice, but for now sometimes

12   there's a little bit of yelling among construction workers

13   out there.  And, occasionally, I'll apologize in advance,

14   the language delves from PG-13 to R, but hopefully that

15   won't be the case here today and nobody will drop anything

16   on their toe or anything and we won't have to hear about

17   that.  So hopefully we'll be able to -- there's no big

18   equipment running today, so it's been relatively quiet in

19   the grand scheme of things.

20        So the other thing I would like to say before we even

21   start with this is your right to counsel stays with you.

22   Okay.  We're going to talk about a lot of rights today:  "Do

23   you understand this right?  Do you understand this is what

24   would happen at a trial?"  Neither I nor anyone is going to

25   ask you to waive your right to have counsel present now or

1     ever.  If you need to stop and talk to your lawyer about

2     something that's going on, just let me know.  We'll stop.

3     We'll take a timeout.  You guys can step out in the hall if

4     you want, whatever you need to do, and take as much time as

5     you need because I understand this is, you know, an

6     important, important process, and I want you to have your

7     eyes wide open.

8           At the end, typically I will ask you, "Did you

9     understand everything that just happened here?"  And the way

10    that we assure that your answer is an enthusiastic "Yes" is

11    by you stopping and talking to Mr. Friedman, if you need to,

12    while we're going through this.

13          So because you're going to be testifying, asking --

14    when you answer questions in court, that's testifying.

15    Okay.  It's as if you were a witness on the witness stand.

16    I'm not going to make you come up and be in the witness

17    stand.  But make no mistake, when you talk in court, it's

18    testimony as if you were on the witness stand.

19          Before we you do that, I'm going to place you under

20    oath.  Will you please raise your right hand?

21                MR. FRIEDMAN:  Would you like us to stand?

22                THE COURT:  No.  That's fine.  I appreciate --

23    and ordinarily the answer would be yes, but in this

24    courtroom, it actually works better.  It's kind of small,

25    and once we're over there in the big space, we'll stand up.

1    But for right now. . .

2                        (Defendant was sworn)

3               THE COURT:  Okay.  Thank you.

4         I told you the first ground we were going to cover was

5    called competence.  That typically involves me asking you

6    some questions that hopefully we both know the answers to.

7         Let's start off with what should hopefully be a pretty

8    easy one.  What's your full name, please?

9               THE DEFENDANT:  My name is Anita Marie Green.

10              THE COURT:  Okay.  And Ms. Green, you can

11   actually push that microphone a tiny bit further away from

12   you so it doesn't pop and stuff.  So we're hearing you just

13   fine.

14        So thank you.

15              THE DEFENDANT:  I do have a little bit of

16   laryngitis.

17              THE COURT:  I do hear that.  I don't know if

18   I've got any --

19              THE DEFENDANT:  I have a. . .

20              THE COURT:  Couple cough drops maybe?  And

21   there's probably fresh filtered water in those pitchers.  We

22   actually run it through a filter.  It's not like we dipped

23   them in the pond outside or something.

24              THE DEFENDANT:  Thank you, Your Honor.

25              THE COURT:  You're welcome.

1           Have you ever gone by any other names other than

2    Anita Green?

3                    THE DEFENDANT:  My maiden name is Steinke.

4                    THE COURT:  Okay.  And how old are you, ma'am?

5                    THE DEFENDANT:  I am 63.

6                    THE COURT:  And in what town do you reside?

7                    THE DEFENDANT:  Wapakoneta, Ohio.

8                    THE COURT:  Are you married?

9                    THE DEFENDANT:  I'm widowed.

10                    THE COURT:  Do you have any dependent

11   children?

12                    THE DEFENDANT:  I do not, Your Honor.

13                    THE COURT:  Okay.  What level of education

14   have you completed?

15                    THE DEFENDANT:  I have four years of college.

16   I actually was hired under a waiver with The Ohio State

17   University and did not complete my bachelor of science.  Six

18   hours short.

19                    THE COURT:  Okay.  Where I was going with

20   that -- I appreciate the further detail, but you're

21   obviously able to read and write just fine?

22                    THE DEFENDANT:  I am, Your Honor.

23        Thank you.

24                    THE COURT:  What type of work or occupation

25   have you been engaged in most recently?

1          THE DEFENDANT:  For 35 years I've been

2     employed by the United States Department of Agriculture with

3     the Farm Service Agency.

4          THE COURT:  How would you describe your

5     physical health?

6          THE DEFENDANT:  Other than the laryngitis

7     today, very excellent health, Your Honor.

8          THE COURT:  As you sit here today, do you take

9     any medicine -- well, do you take any medicine?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Okay.  And I will ask you because

12     I have to, as you sit here today, are you under the

13     influence of any drug, any alcohol, any substance at all

14     that could in any way impair your ability to understand

15     what's going on here?

16          THE DEFENDANT:  No, Your Honor.

17          THE COURT:  Have you ever been under the care

18     of a doctor or a counselor or a clinic or a hospital or

19     anything like that for any sort of mental health situation?

20          THE DEFENDANT:  I am currently under

21     counseling voluntarily with a counselor.

22          THE COURT:  Okay.  But you don't take any

23     medicine for that?

24          THE DEFENDANT:  No, Your Honor.

25          THE COURT:  And is there any particular

1    diagnosis that you're working through -- depression,

2    anxieties -- or just counseling to. . .

3                    THE DEFENDANT:  Post-traumatic stress

4    syndrome.

5                    THE COURT:  Okay.  As you sit here today, is

6    your mind clear?

7                    THE DEFENDANT:  Yes, Your Honor.

8                    THE COURT:  You understand you're sitting --

9    it's a little small-ish, I get it, but we call it a

10   courtroom -- in the courthouse in Toledo, Ohio, and that

11   there's a criminal charge which has been brought against

12   you, an indictment by a grand jury and a charge that's been

13   lodged?

14       Do you understand all of that; correct?

15                   THE DEFENDANT:  Yes, I do, Your Honor.

16                   THE COURT:  Okay.  Mr. Friedman, have you had

17   any difficulty communicating with Ms. Green?

18                   MR. FRIEDMAN:  I have not, Your Honor.

19                   THE COURT:  Do you believe that she

20   understands the nature and purpose of our hearing here

21   today?

22                   MR. FRIEDMAN:  I do.

23                   THE COURT:  Do either you or Ms. Sterling have

24   any reservations at all about her competence here today?

25                   MS. STERLING:  I do not.

1            MR. FRIEDMAN:  Nor do I.

2            THE COURT:  Nor do I.  I've had the

3    opportunity to interact with Ms. Green here in court.  I've

4    observed her affect and demeanor.  I've listened carefully

5    to her answers to my questions.  And everything I've seen

6    and heard has been entirely appropriate.  I will therefore

7    determine that she is competent and we will proceed.

8        Ms. Green, have you had enough time to meet with your

9    lawyer while this case has been pending?

10            THE DEFENDANT:  I have, Your Honor.

11            THE COURT:  And the next question I'm going to

12   ask you I'm going to put it in context a little bit.  The

13   question is going to be:  Have you told your lawyer

14   everything that you know about the case?  And let me put it

15   in context for you.

16       When you go to the doctor, you have to be able to tell

17   the doctor everything about what's going on in your world so

18   that the doctor can look at the totality of the

19   circumstances and make a diagnosis.  And we put a privilege

20   around that so you can tell your doctor secret things and

21   the doctor can't say anything about that to anyone else so

22   that the doctor has the ability to give you the best

23   possible medical advice.

24       We put that same protection around the relationship

25   between a client and a lawyer so that you can tell the

1     lawyer everything there is to know about the case.  Every

2     secret you have, you can tell your lawyer so that your

3     lawyer can help you make the best decisions.

4          With that understanding, have you told your lawyer

5     everything there is to know about this case?

6                    THE DEFENDANT:  Yes, Your Honor, everything I

7     can recall and every question I've been asked, and certainly

8     every emotion, every fact.

9                    THE COURT:  I just need to be make sure that

10    you haven't gone through and selectively told him about

11    things because some people have a propensity to do that.

12    They tell the doctor or the lawyer the things that they

13    think he or she needs to know, and they hold back the other

14    stuff.  So I just need to know that you haven't done that.

15    You've just sort of, to use the vernacular, spilled your

16    guts to Mr. Friedman and told him everything there is to

17    know about the case?

18                    THE DEFENDANT:  I have, Your Honor.

19                    THE COURT:  Okay.  And you've talked with him

20    about how you might defend the case, what it would look

21    like, what your odds might be, whether you should entertain

22    the notion of entering into a plea?  You've had those kind

23    of conversations with Mr. Friedman as well I take it?

24                    THE DEFENDANT:  We have spoke about trial and

25    about plea, yes.

1                    THE COURT:  Okay.  Are you satisfied with the

2      legal representation which Mr. Friedman has provided for you

3      in this case?

4                    THE DEFENDANT:  I am satisfied, Your Honor.

5                    THE COURT:  Okay.  Mr. Friedman, as an officer

6      of the court, are you able to assure me that you have

7      adequately prepared -- you and your partner, Mr. Nemecek,

8      have adequately prepared Ms. Green at each and every stage

9      of this proceeding?

10                    MR. FRIEDMAN:  Yes, Your Honor, I am assuring

11     you of that.

12                    THE COURT:  Thank you, sir.

13          Ms. Green, as someone charged with a crime for which a

14     potential of incarceration is in play -- we talked about

15     some of your rights that you had back at the time of your

16     arraignment, particularly your right to counsel and that

17     kind of stuff, which I've told you again today.  We're not

18     going to talk about that anymore because we're not going to

19     waive that.

20          We're going to talk about some rights now that you are

21     going to be waiving.  Under the laws and Constitution of the

22     United States, you have the right to have a trial by a jury.

23     Okay.  At that trial, you would begin not guilty.  It's

24     called a presumption of innocence.  So when you walk into

25     the courtroom, you are not guilty, and the jury is

1    instructed to that effect.  The jury is instructed that you

2    begin the case not guilty, and you stay that way unless and

3    until the Government overcomes that presumption of innocence

4    by proving to the jury with proof beyond a reasonable doubt

5    that you are, in fact, guilty.

6         You don't have to prove that you are not guilty.  The

7    burden never shifts.  It always stays with the Government.

8    The burden of proof is on the Government to prove with a

9    high standard -- proof beyond a reasonable doubt -- that you

10   are, in fact, guilty.

11        Do you understand that?

12             THE DEFENDANT:  I do, Your Honor.

13             THE COURT:  Okay.  If the case went to trial,

14   it is all done out in the open.  So every piece of evidence

15   that the Government might offer, you would get to see, and

16   you and your lawyers could argue to the jury about that

17   evidence, both as to its admissibility and as to its, you

18   know, probative value to the jury.

19        You would also have the critically important right to

20   confront and cross-examine any witnesses that the Government

21   might bring in to testify against you.  So the Government

22   would call the witness to the stand.  When they got done

23   asking questions of that witness, your lawyer would get up

24   and cross-examine that witness, if he wanted to, and, in so

25   doing, attempt to perhaps undermine the probative value of

1      that witness's testimony maybe by impeaching them, or

2      suggesting that they have misremembered something or got

3      something wrong, but to take away the value of that

4      testimony from the Government's attempt to prove their case.

5      You would have the right to do that for every witness that

6      the Government brought in to testify against you.

7           You would also have the ability to use the authority

8      of the Court to compel the attendance of any witnesses you

9      wanted to come in and testify on your behalf.  You would

10     issue something called a subpoena.  And that's, in so many

11     words, a Court order commanding the attendance in the

12     courtroom of any person that you wanted to come in and

13     testify on your behalf.  Now, I think I've said already, you

14     don't have to prove anything, and you wouldn't have to put

15     on a case at all.  But if you chose to, you could use the

16     authority and power of the Court to compel the attendance of

17     any witnesses you wanted to come in and testify on your

18     behalf.

19          Do you understand all of that stuff that we just

20     talked about?

21                    THE DEFENDANT:  I do, Your Honor.

22                    THE COURT:  Okay.  If the case went to trial,

23     you would have the right to take the stand and testify if

24     you wanted to.  You could tell the jury your story.  You

25     would also have the critically important right to not

1    testify at the trial.  We all -- everyone in the room -- as

2    the right under the Fifth Amendment to not take the stand at

3    our own criminal trial, and most people don't.  The jury

4    would be instructed that the burden of proof is entirely on

5    the Government, that you don't have to prove a darn thing,

6    and that they should not expect to hear you testify.  And I

7    would look them in the face and I would tell them that it

8    would be a violation of their very oath as jurors if they

9    somehow judged you harshly or held it against you because

10   you failed to take the stand.

11        Do you understand all of that?

12             THE DEFENDANT:  I do, Your Honor.

13             THE COURT:  Okay.  If the case were to go to

14   trial, wed have a process called voir dire.  Voir dire

15   (pronouncing) is how they say it down south.  Voir dire is

16   how we say it up here.  But anyway, it's a process where we

17   interview the prospective jurors.  And we're trying to find

18   out if a particular individual can be fair and impartial.

19   And by that I mean can he or she judge you in this case

20   based on the facts and the evidence, frankly, that they see

21   and hear in the courtroom and apply the law that I give them

22   in the jury instructions without being unduly influenced or

23   affected by other things that they might either know or

24   think they know or other thoughts they may have maybe about

25   the way things ought to be, things like that.  So I would be

1    searching for jurors who could give you a fair trial; they

2    could judge you based on the evidence that they see and hear

3    in the courtroom and follow the instructions of law that I

4    give them.

5         Once I had a panel of individuals that I was convinced

6    could do that, then there would still be an opportunity for

7    both sides to send a fair number of jurors home, and those

8    are called "peremptory challenges," and each side gets a

9    fair number of those.  Particularly, the defendant would get

10   ten of those, and the Government would get six of those.

11   And those are jurors that are excused by the parties and no

12   one has to give a reason.  They are just excused.  All

13   right.

14        Once we got done with that process, we would be left

15   with a jury of 12 individuals.  They would have to -- if

16   more than one person were on trial, they would have to

17   consider each person separately, and if more than one count

18   is in play, they would have to consider each count

19   separately.  So as to each count against each individual,

20   they have to consider it separately, and they have to reach

21   a unanimous decision -- all 12 -- either guilty or not

22   guilty as to a particular count against a particular

23   individual.  And they have to do that for as many counts and

24   as many individuals as there are.

25        Do you understand that?

1              THE DEFENDANT:  I do, Your Honor.

2              THE COURT:  Do you understand you don't have

3     to plead guilty?

4              THE DEFENDANT:  I do.

5              THE COURT:  You have the right to maintain

6     your plea of not guilty.  If you do so, the case will go to

7     trial.  I think we're presently scheduled for early next

8     year, and all those rights that we just talked about will be

9     afforded you at that time.  And you have the right to have

10    an attorney there.  If somehow you were unable to afford to

11    continue to provide your own attorney, the Court would

12    provide counsel for you at a trial, which, as I said, is

13    already scheduled.

14         Do you understand all of that?

15              THE DEFENDANT:  I do Your Honor.

16              MR. FRIEDMAN:  Your Honor, if I may.

17         Ms. Green has leaned over and asked if she could speak

18    to me for a quick moment.

19              THE COURT:  Yeah, sure.

20              MR. FRIEDMAN:  Is that okay?

21              THE COURT:  Sure.

22              MR. FRIEDMAN:  Thank you.

23         And because she's got the laryngitis, do you mind if

24    we step out?

25              THE COURT:  I don't mind at all, don't mind at

1    all.

2                    (Discussion held off the record between

3    Mr. Friedman and the defendant.)

4                    MR. FRIEDMAN:  Your Honor, thank you.

5                    THE COURT:  Are we okay?

6                    MR. FRIEDMAN:  Yeah.  Not having gone through

7    this process before, and obviously it being scary for

8    everybody, anyone who sits in this seat in particular, there

9    was some questions overall.  But as an officer of the court,

10   nothing has changed.  There's been no question as to any of

11   the responses given thus far this afternoon.

12                   THE COURT:  All right.  Well, ma'am, I try to

13   keep this as conversational as I can.  So I guess sometimes

14   that's off-putting to people that I'm chatting as opposed to

15   being, you know, more hard edged about it, but I try to be

16   conversational about it to make it less scary, but hopefully

17   that is not weirding you out.  But anyway. . .

18                   THE DEFENDANT:  It's just a big decision.

19                   THE COURT:  Well, yeah.  You're not wrong,

20   you're not wrong.

21       So if the case were to go to trial and you were to be

22   convicted, you'd have the right to appeal the fact of your

23   conviction as well as any sentence that I might impose.  And

24   while there's no plea agreement here with any kind of

25   formal, you know, written waivers, it would be crazy not to

1    think that at least as to the part of the conviction, I

2    think you're boxing yourself in a little bit in terms of

3    taking an appeal from the fact of a conviction when you

4    plead guilty and you admit that you did what the Government

5    says you did, which is part of what's going to happen here

6    today.

7           Do you understand that?

8                    THE DEFENDANT:  I do, Your Honor.

9                    THE COURT:  Okay.  So if we get to the end of

10   this and I say, "How do you plead to" I think it's Count 6

11   of the indictment by my recollection, and you say, "Guilty,"

12   what's going to happen is I'm going to refer the matter to

13   the United States Pretrial and Probation Office, and they're

14   going to prepare something called a presentence

15   investigation report, and we'll talk a little bit more about

16   that here in a minute.

17          I need to make sure you understand a couple of other

18   effects of pleading guilty to a charge like this in federal

19   court.  First of all, some of your civil rights will be

20   impacted for a while.  Okay.  So, for example, your right to

21   vote, your right to sit on a jury, and your right to hold

22   public office will be impaired or, frankly, taken away for a

23   period of time while you are under any sentence that the

24   Court may impose.  But my understanding of the current State

25   of Ohio law anyway is that those rights come back to you

1    automatically.  You can just go register to vote.  And I'm

2    not giving you legal advice here -- you have to talk to your

3    lawyer -- but my understanding is those rights come back to

4    you automatically.  Other states I think maybe you have to

5    fill out some paperwork or something or restore your rights,

6    but those rights are restorable.  Okay?  There is one right

7    which, if you are adjudicated guilty of a felony like this,

8    under the current state of the law, at least, you will never

9    for the rest of your life ever legally possess a firearm or

10   ammunition.

11        Do you understand that?

12             THE DEFENDANT:  I do, Your Honor.

13             THE COURT:  Ms. Sterling, I'm drawing a blank.

14   Did I ask you to go over the charge and the potential

15   penalties earlier when I normally would have?  Because I

16   think I might have skipped over that.

17             MS. STERLING:  You did not.

18             THE COURT:  I did not skip over it?  Or I did

19   not ask you to do it?

20             MS. STERLING:  You did not ask me to do it.

21             THE COURT:  Okay.  So let's talk about that

22   now.  And this is what we'll call the re-arraignment part of

23   the proceeding.

24        And the further I get from my little outline here, the

25   easier it is for me to skip something.  So I just looked

1      back over it, and I thought, "Geez, I don't remember going

2      over it."

3            So why don't we ask Ms. Sterling to tell us about the

4      charge that you're named in in the indictment.  As part of

5      doing that, she'll tell you not only what the charge is but

6      also what the potential penalties could be if you are

7      adjudicated guilty of that offense.

8            Ms. Sterling.

9                  MS. STERLING:  Certainly, Your Honor.

10           As you noted, this defendant is charged in one count

11     of the indictment, that being Count 6, a charge known as

12     accessory after the fact.  That's a violation of Title 18,

13     United States Code Section 3.

14           If convicted of that charge, she faces a maximum of up

15     to 15 years' imprisonment.  There is no mandatory minimum

16     period.  She faces a maximum fine of up to $500,000, a

17     maximum period of supervised release of three years, and,

18     further would be required to pay a $100 special assessment.

19                  THE COURT:  Do you understand all of that,

20     Ms. Green?

21                  THE DEFENDANT:  I do, Your Honor.

22                  THE COURT:  Okay.  Looks like you have a

23     question.  Do you want to ask Mr. Friedman something else?

24                  THE DEFENDANT:  Can you just read the actual

25     statute, the code, itself?

1          THE COURT:  Sure.

2          MS. STERLING:  Sure.  Happy to do that,

3     Your Honor.

4          THE COURT:  And go ahead and tell us the code

5     section, Ms. Sterling, and also if you could tell us the

6     elements of the offense that would have to be proved, I

7     would appreciate that as well.

8          MS. STERLING:  Certainly, Your Honor.

9          As set forth in the indictment, Count 6 reads as

10    follows:  On or about April 24th, 2022, and continuing

11    through April 28th, 2022, in the Northern District of Ohio,

12    Western Division, Defendant Anita Green, knowing that

13    Amanda Hovanec and Anthony Theodorou had caused the death of

14    T.H., a person known to all the parties, by means of

15    distribution of a controlled substance, did receive,

16    relieve, comfort and assist Hovanec and Theodorou in order

17    to hinder and prevent their apprehension, trial and

18    punishment, again, in violation of Title 18, United States

19    Code Section 3.

20         The elements of that offense, Your Honor, are as

21    fellows:  One, the defendant knew someone else had already

22    committed the crime of distribution of a controlled

23    substance that resulted in death;

24         Two, the defendant then helped that person try to

25    avoid being arrested, prosecuted or punished and;

1          Three, the defendant did so with the intent to help

2     that person avoid being arrested, prosecuted or punished.

3                    THE COURT:  Do you guys need to chat again?

4                    MR. FRIEDMAN:  Do you need to chat again?

5                    THE DEFENDANT:  Yes, please.

6                    THE COURT:  Okay.  We'll take another recess.

7                    (Discussion held off the record between

8     Mr. Friedman and the defendant.)

9                    MR. FRIEDMAN:  Your Honor, may I?

10                   THE COURT:  Yes.

11                   MR. FRIEDMAN:  Thank you.

12        Again, thank you for affording us the opportunity to

13    speak.

14        Again, all of the responses given, I have, as an

15    officer of the court, no question of the reliability and

16    intent of those responses.  I'll simply just say that break,

17    sometimes -- well, Ms. Green, never having been through this

18    before, her nerves are such that we just answered a question

19    outside and, frankly, spent the rest of that time breathing.

20        So --

21                   THE COURT:  Okay.

22                   MR. FRIEDMANN:  -- that's really what this is

23    about.  It's not a question of what was stated.  It's just a

24    question of getting through this process here today.

25                   THE COURT:  I understand.  I really do.

1          Because I don't have it on my piece of paper, and I

2    couldn't write quite as fast as you said, Ms. Sterling,

3    would you tell me the elements one more time?

4                    MS. STERLING:  Certainly, Your Honor.

5          First, is that the defendant knew someone else had

6    already committed the crime of distribution of a controlled

7    substance that resulted in death;

8          Two, the defendant then helped that person try to

9    avoid being arrested, prosecuted or punished and;

10         Three, the defendant did so with the intent to help

11   that person avoid being arrested, prosecuted or punished.

12                    THE COURT:  Okay.  Thank you.

13                    MS. STERLING:  I do have, Judge, if it would

14   help you, a copy of the pattern instruction from the Circuit

15   if you'd like that in front of you.

16                    THE COURT:  That would be terrific.  I was

17   going to ask you for that, too, when Mr. Friedman was

18   outside.

19         So, Ms. Green, do you understand the charge which has

20   been lodged against you and the potential penalties that

21   would be associated with the conviction of that offense?

22                    THE DEFENDANT:  I do, Your Honor.

23                    THE COURT:  Okay.  Thank you.

24         So we've talked about the potential penalties, some of

25   which are obvious.  The special assessment is over and above

1    any fine, and it's $100.  It seems sort of trivial to even

2    talk about it, but we have to.  As part of this, we have to

3    say there is a special assessment.

4        There's also something called supervised release,

5    which happens almost always on the other side of any term of

6    imprisonment, that might otherwise be ordered.  And

7    supervised release is a period of time where you would be

8    supervised by a probation officer.

9        I don't order supervised release as punishment, even

10   though technically it is.  It is just my opportunity to make

11   sure that the people who come back from any kind of sentence

12   have an opportunity to work with a probation officer to make

13   sure that they don't somehow re-offend.  Okay?  So it's more

14   of an opportunity to avoid getting in trouble again than to

15   be caught getting back in trouble again.

16       But there is one part of that that I actually have to

17   explain to you, which is in the unlikely event you were to

18   violate your supervision in a way that caused a revocation

19   of your supervision, i.e., you got sent to jail or sent back

20   to jail, another period of supervised release could be

21   reimposed, and you wouldn't get credit for the amount of

22   supervised release that you had served prior to the

23   revocation; and, secondly, it is conceivable and

24   hypothetical, so therefore I have to explain to you that

25   this could happen if you get into a vicious cycle or

1    revolving door situation where you violate, get released,

2    violate, get released.  That could go beyond the statutory

3    maximum.  Okay?  I have no reason to suspect that that would

4    ever happen in this case, but I have to -- that's one of the

5    things that I have to explain to you that could happen,

6    okay, so that our eyes are all wide open for the possibility

7    of things that could go wrong.

8         I'm not aware of any restitution here at this point.

9    Is that something that we have to talk about, Ms. Sterling?

10                MS. STERLING:  Well, it certainly -- the Court

11   has the ability to order restitution.  I'm not currently

12   aware of a request, but that could be forthcoming.  As you

13   know, typically in these cases, statements will go out to

14   the victim's family, but I've not yet received anything.

15                THE COURT:  Right.  So I don't see it, as I

16   sit here today, Ms. Green, but there is the possibility that

17   someone could claim that your action caused them damage.

18   And if so, that would be something that we would have to

19   consider at the time of sentencing, a restitution order.

20   Okay?

21                MR. FRIEDMAN:  Your Honor, I would --

22                THE COURT:  Yes, go ahead.

23                MR. FRIEDMAN:  I would just ask to clarify one

24   issue because I know it is going to be a question.  While

25   the Government, obviously, is not involved at all in any

1  civil resolution, I just want to clarify that because I know

2  Anita is going to ask me afterwards if that is one in the

3  same.

4         We have been dealing with a compensation aspect within

5  the civil realm on this within the estate --

6                  THE COURT:  Yeah.

7                  MR. FRIEDMAN:  -- and so just to make clear,

8  there has been no indication that restitution will be sought

9  after in this case, but it could happen, but the value so

10  far that has been assessed has been taken care of and

11  satisfied in the civil realm.

12                  THE COURT:  Yeah.  I don't know anything about

13  the civil realm.

14                  MR. FRIEDMAN:  Exactly.

15                  THE COURT:  But there is a possibility that I

16  have to put you on notice of, but as I sit here today, it is

17  not in front of me right now, but it is something that could

18  spring up.  Okay?

19         Do you understand that?

20                  THE DEFENDANT:  I do understand.

21                  THE COURT:  Okay.  Part of restitution also

22  could, although I wouldn't necessarily expect it to be so --

23  I haven't seen it on my watch -- but there are certain

24  circumstances where you could be ordered to pay some or all

25  of the cost of your confinement, or some or all of the cost

1    of your supervised release on the other side of that so.  I

2    have to put you on notice of that as well.  Okay.  Again,

3    not something that I'm seeing as I sit here today, but it is

4    among the things that could happen.  Okay?

5                        THE DEFENDANT:  Yes, Your Honor.

6                        THE COURT:  So between now and the time of

7    sentencing, I told you that a presentence investigation

8    report will be prepared.  That report will -- they're

9    comprehensive.  Sometimes you hear in state court somebody

10   is found guilty or pleads guilty today and their sentencing

11   is Thursday or something.  It isn't like that here.  It's,

12   you know, 16 or 17 weeks.  And during that time, a pretty

13   comprehensive document is prepared, which will have, in so

14   many words, your life story, and it will also have all of

15   the surrounding facts about, you know, what happened here in

16   there.

17       Then the probation officer will take the "what

18   happened" part and go through -- this is called the

19   Guidelines Manual.  It is promulgated by the United States

20   Sentencing Commission, and it lists, you know, every federal

21   law violation.  And then there are -- so it starts off with

22   a based offense level, and then there are things that make

23   it go up, and then there are things that make it go down,

24   the aggravating facts and mitigating facts.  And ultimately,

25   we come out with a number, which is a recommendation.  You

1      come out with a -- there's two numbers on it.  It's a grid,

2      and there's an X axis and a Y axis, and, you know, you go

3      down -- is it the X axis that's up and down?  It's been a

4      minute since I took geometry class.  But the offense level

5      goes down, and then your criminal history goes across, and

6      we just come down on the chart, and there's, you know,

7      ultimately a recommended sentence under the guidelines.

8      Okay?

9             And all of that is pretty black and white and pretty

10     transparent.  Sometimes there is a little disagreement where

11     the probation officer and the Government might say, "This

12     enhancement should apply," and your lawyer may say, "No,

13     that shouldn't," and so I have to adjudicate, you know, that

14     part of it, but ultimately we come up with a number on that

15     grid.  Okay?

16            And, I don't know, have you guys done that here,

17     Ms. Sterling?  Do you have some idea of what that might look

18     like?

19                  MS. STERLING:  We have.  And we've had

20     conversations with Mr. Friedman about that, and suffice it

21     to say that the parties have reached different conclusions.

22                  THE COURT:  So anyway, whatever it comes out

23     to be, Ms. Green, I'll get it right, I promise, or I'll do

24     my best to get it right.  The Court of Appeals might

25     disagree with me, but I'll do my best to get it right.  But

1      then, even when we get to that point, that's advisory.  I

2      might follow it, I might not, and I can't guarantee you one

3      way or the other.  I can't guarantee you what it's going to

4      be, and I can't guarantee you if I'm going to follow it.  I

5      have to explain why I either think it's right or why I think

6      it's wrong.  If it's right, I have to explain why I think

7      it's right.  If it's wrong, I have to explain why I think

8      it's wrong; why I think the proper sentence should be less

9      than the guidelines would call for or maybe more than the

10     guidelines would call for, depending on the case.  I think

11     it's fair to say the further I get from the guidelines, the

12     more explaining I need to do as to keep it reasonable

13     because the guidelines exist for a reason.  And I'm not

14     saying that they are always correct.  Sometimes they're not

15     correct.  And I will say, if I find that they are not the

16     right answer, I will explain why.  Okay?

17          There is a statute that guides a sentencing called 18

18     U.S.C. Section 3553(a).  And in the biggest of pictures, I

19     have to look at, you know, what is right sentence that takes

20     into account the seriousness of what happened, the nature

21     and circumstances of the person who committed the crime.  We

22     have to look at making sure that there is a deterrent effect

23     so other people aren't apt to commit that same crime.

24     Sometimes, if there is a likelihood that the crime is going

25     to get repeated over and over and over again by the person,

1    we serve a purpose with a sentence by incapacitating the

2    person.  We pull them out of society so they can't keep

3    committing crimes.  And there's also the rehabilitative

4    aspect of a sentence where, you know, sometimes people are

5    in need of treatment or, you know, vocational training or

6    educational or all kinds of things like that.  So there is a

7    whole panoply of things that Section 3553(a) tells me I have

8    to look at, including what the guidelines would suggest; but

9    they're just one factor of a whole bunch of factors that,

10   for every one of those, I have to come up with a number, a

11   sentence which is sufficient, but not excessive.  Okay.

12   That's the magic words that you will hear at the time of

13   sentencing, if it comes to that, that the sentence has to be

14   sufficient to meet all of those objectives, but not

15   excessive, enough, but not too much.  Or, you know, to take

16   it into the forest and talking porridge, not too hot, not

17   too cold, but just right.  And that's my oath that I follow,

18   to fashion a sentence which is enough, but not too much,

19   okay, and I do that under 3553(a).

20        What you have to understand as you sit here today,

21   though, is I don't know what your sentence is going to be in

22   this case; so there's no way in heck you can know what my

23   sentence is going to be in this case.

24        If I happen to sentence you more severely than you

25   presently expect, that might be a reason to take an appeal

1      from my sentence.  If Mr. Friedman can point out to

2      something that I did that's either substantively or

3      procedurally messed up, he can take an appeal from that.

4      But what you have to understand is if I happen to sentence

5      you more severely than you expect, that will never be a

6      basis or a reason to come back and withdraw your guilty

7      plea.

8           Do you understand that?

9                THE DEFENDANT:  I do, Your Honor.

10               THE COURT:  Okay.  So I alluded to this

11     before, but I don't let people plead guilty unless they

12     admit that they did what the Government said they did.

13     Rather than me asking you to get up and say, "Well, here's

14     what I did," or me asking you question, what I like to do is

15     have the Government offer what's called a factual basis for

16     the plea and that usually sounds like, you know, they say,

17     "If this case had gone to trial, the Government would have

18     proved beyond a reasonable doubt that this happened, and

19     this happened, and this happened," and so forth.

20     Presumably, they will cover, as part of that, the elements

21     of the offense and not too much beyond that, but they'll

22     tell you what they would tell all of us, what they would

23     have proved if the case had gone to trial.

24          When she gets done with that, I'm going to ask you a

25     couple of questions.  First of all, is she right that they

1      could prove that, and second of all, did you do that.  Okay?

2      So please listen carefully as Ms. Sterling offers the

3      factual basis for the plea here today.

4                    MS. STERLING:   Thank you, Your Honor.

5           On or about April 24th, 2022, Amanda Hovanec and

6      Anthony Theodorou did knowingly and intentionally distribute

7      a controlled substance to T.H. that resulted in T.H.'s

8      death.  The defendant, Anita Green, knew that Amanda Hovanec

9      and Anthony Theodorou had committed this crime and

10     thereafter took steps to help them avoid being arrested,

11     prosecuted or punished.

12          Specifically, after this crime had been committed, the

13     defendant drove Amanda Hovanec, Anthony Theodorou and T.H.'s

14     dead body to a location where Amanda and Anthony buried

15     T.H.'s body.

16          Subsequent to the burial, the defendant returned to

17     the location to pick up Amanda and Anthony and return them

18     to her home where the crime had been committed.

19          In the days that followed, the defendant engaged in

20     several conversations with law enforcement that were

21     designed to thwart law enforcement's efforts to locate T.H.

22     and cover up the crimes that had been committed.

23          In her post-arrest statements, the defendant admitted

24     that she had committed these acts with the intention of

25     protecting Amanda Hovanec and preventing her arrest and

1      prosecution.

2            All of the activities outlined above took place here

3      in the Northern District of Ohio, Western Division.

4                      THE COURT:  Ms. Green, did you hear all that?

5                      THE DEFENDANT:  I did, Your Honor.

6                      THE COURT:  Is she right?

7                      (Discussion held off the record between

8      Mr. Friedman and the defendant.)

9                      THE DEFENDANT:  The charges are correct.

10                     THE COURT:  Well, did you do what Ms. Sterling

11     says you did?

12                     THE DEFENDANT:  The "knowingly."

13                     THE COURT:  Say it again.

14                     THE DEFENDANT:  I said that I'm questioning

15     the "knowingly," like, that there was -- I forget how you

16     started.

17                     THE COURT:  Well, what part of what she

18     said -- what are you quibbling with about "knowingly"?  What

19     are you saying you didn't know?

20                     THE DEFENDANT:  I don't know what they did.

21                     THE COURT:  Well, did you know that they --

22     did you know that they killed T.H.?

23                     THE DEFENDANT:  I did, after the fact, yes.

24                     THE COURT:  Okay.

25                     THE DEFENDANT:  I just don't know how.

1          THE COURT:  Well, the elements of the offense

2     are that you knew -- you knew that they had killed T.H.;

3     correct?

4          THE DEFENDANT:  Yes, after the fact, I knew

5     that.

6          THE COURT:  Okay.  And you helped them not get

7     arrested.  You gave false information to the police, and you

8     did other things to help them avoid being caught.

9          Would that be true?

10          THE DEFENDANT:  That is.

11          THE COURT:  And the reason you did those

12     things was specifically to help them avoid being arrested,

13     prosecuted or punished.

14          Is that true?

15          THE DEFENDANT:  I did it to protect my

16     daughter, yes.

17          THE COURT:  Well, to protect her from being

18     arrested and charged and punished with the crime that she

19     had committed; correct?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Okay.

22          MS. STERLING:  Judge, could you repeat that

23     last part, please?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  No, no, no.

1          She wants me to say:  You did what you did, in terms

2     of the false information to the police and the things that

3     you did with your daughter and her friend, you did all of

4     that specifically to help them avoid being -- to avoid them

5     being arrested, prosecuted or punished for the crime that

6     they had committed.

7          Would that be correct?

8                    MR. FRIEDMAN:  Your Honor, just one slight

9     clarification on that.  You had said, "to help them."  And I

10    think what Anita said was to help her daughter, but --

11                    THE COURT:  Okay.

12                    MR. FRIEDMAN:  -- other than that slight --

13                    THE COURT:  All right.  Okay, okay.

14         To help your daughter -- specifically, to help your

15    daughter, who you knew was -- had killed T.H.  You

16    intentionally helped her avoid being arrested and prosecuted

17    and punished for doing that; is that correct?

18                    THE DEFENDANT:  Yes, Your Honor.

19                    THE COURT:  Ms. Sterling?

20                    MS. STERLING:  Judge, could we have a moment,

21    please?

22                    THE COURT:  Yes.

23                    (Discussion held off the record between

24    Ms. Sterling and Ms. Baeppler.)

25                    MS. STERLING:  Judge, at this time, we're

1       going to ask for a brief recess if that's okay with the

2       Court.  We would like the opportunity to speak to

3       Mr. Friedman for a few moments.

4                       THE COURT:  Okay.  Sure.

5                       MS. STERLING:  Thank you.

6            Judge, is this room back here available?  Or do you

7       have a clerk back there?

8                       THE COURT:  I have a clerk back there.

9                       MS. STERLING:  Okay.

10                      THE COURT:  So my office is available.

11                      MS. STERLING:  Oh, no, that's --

12                      THE COURT:  No, seriously.

13                      COURTROOM DEPUTY:  We can let them in the jury

14      room.

15                      THE COURT:  Oh, yeah.  The jury assembly room,

16      or you're welcome to use my office.

17                      (Discussion held off the record between

18      Ms. Sterling, Ms. Baeppler and Mr. Friedman.)

19                        (Pause in the proceedings.)

20                      MR. FRIEDMAN:  May I?

21                      THE COURT:  Sure.  We'll go back on the

22      record.

23           You can be seated.  You're fine.

24                      MR. FRIEDMAN:  Well, I'm going to sit and get

25      back up.

```
 1                    THE COURT:  No, you're fine.  You can stand
 2      up.  It's fine.
 3                    MR. FRIEDMAN:  Your Honor, I may need a few
 4      minutes with Ms. Green.
 5                    THE COURT:  Okay.
 6                    MR. FRIEDMAN:  Hopefully it's a few minutes.
 7                    THE COURT:  Okay.
 8                    MR. FRIEDMAN:  But it could be 15 to
 9      30 minutes.  So I don't know. . .
10                    THE COURT:  Oh.
11                    MR. FRIEDMAN:  And I don't know if that leaves
12      us enough time, or if you want to continue the matter.
13                    THE COURT:  No.  That's fine.  Take her over
14      where you guys just were.  That's fine.
15                    MR. FRIEDMAN:  Okay.  Very good.  Thank you.
16                    (Discussion held off the record between
17      Mr. Friedman and the defendant.)
18                         (Pause in the proceedings.)
19                    THE COURT:  All right.  Mr. Friedman, do you
20      want to bring me up to speed?
21                    MR. FRIEDMAN:  Thank you, Your Honor.
22           Your Honor, we are prepared to proceed with the plea,
23      and I was talking to Assistant United States Attorney
24      Baeppler during the break once we returned from the room,
25      and if the Court would give me a little latitude to tell a
```

1   very, very brief story, I think it will tell exactly about

2   what's going on here.

3                THE COURT:  Sure.

4                MR. FRIEDMAN:  Thank you.

5        So as I was stating during the break, many years ago,

6   my wife got a speeding ticket in Cleveland Heights -- it's

7   all relevant to this.  It will come around in a moment.

8                THE COURT:  Okay.

9                MR. FRIEDMAN:  But she got a speeding ticket

10  in Cleveland Heights.  And I told her, of course, I'll

11  represent her so she didn't have to hire another lawyer.

12  And I had took her in there, and we did the very quick

13  speeding ticket and took care of it.  And when we left, for

14  me, I felt perfectly fine and was getting ready to move on

15  to the next matter.  My wife looked at me, she said, "What

16  just happened in there?"

17       And the reason I bring that up is I'm getting the same

18  feeling when speaking with Ms. Green; that it's much

19  different sitting there and hearing the recitation of facts

20  than it is for the three counsel, Your Honor and everyone

21  who has been in here who do this every day.  And so terms

22  like "knowingly" and the definitions and so forth are being

23  blurred together because there's -- without getting into it

24  until the time of sentencing, there is a fact pattern that

25  is agreed to, and there is a fact pattern that is not.  And

1       the question -- and I appreciate the United States Attorneys

2       bringing this issue out now.  I think they were correct in

3       asking for that break.  And I was provided the discovery,

4       which I had gotten before, but given again today to just

5       show Ms. Green now so that we could really talk about again,

6       bring her back to the reason that we agreed to be here

7       before you today.  And while I anticipated it may take 15 to

8       30 minutes, obviously I was wrong.  The second I said,

9       "Look, we've discussed this and this is where we are," she

10      said, "Well, yeah, of course, and nothing has changed?"  It

11      sounded different coming through the elements of the

12      offense, jury instructions and conversations versus the way

13      that I talked about it.  And so there was a fear that what

14      we had talked about for so long before this, that that was

15      changing before her eyes.  It is not.

16              And so she is prepared to acknowledge under the

17      knowingly culpability -- knowingly or should have known

18      culpability, one being the same -- they are both being the

19      same, I should say, in this case.  And I'm very comfortable

20      that now that we've had this discussion, any questions you

21      have will be answered affirmatively by Mrs. Green, without

22      any pressure or threats or promises made during the break by

23      any party, the Government, defense or any third parties.

24                      THE COURT:  Well, Ms. Sterling, do you want to

25      offer up, I don't know, a new and improved or restated

1    factual recitation and ask her to agree with it?  Do you

2    want me to ask her questions?  Do you want to ask her

3    questions?  How do you want to roll here?

4              MS. STERLING:  I mean, Judge, as far as I'm

5    concerned, we can just go one by one through the elements,

6    and she can acknowledge that she did that or she knew that.

7              THE COURT:  Yeah.  That's what I was trying to

8    do before, I think, and we somehow got derailed a little

9    bit, but let's start with that.

10        Ms. Green, you knew that your daughter and her, I

11   guess, friend, but specifically we'll talk about your

12   daughter because somehow that was important to talk about

13   her as opposed to -- you knew that they killed T.H., I'm

14   thinking, in the driveway there; right?  I mean, you knew

15   that it had happened; correct?

16             THE DEFENDANT:  I know.  Yes, I do.

17             THE COURT:  All right.  And they did it with

18   some kind of drug that they imported.

19        You knew that also, correct?

20             THE DEFENDANT:  After the fact, yes.

21             THE COURT:  Okay.  And after the fact, you

22   then helped -- let's talk about your daughter -- you helped

23   her avoid being arrested, prosecuted or punished, and

24   specifically you did that by, among other things, I think

25   you participated in helping get rid of T.H.'s car or taking

1       them somewhere to bury the body or whatever, but you also

2       gave some misinformation to the police, I think, when the

3       police came, as I recall.  And it's been a long time since I

4       read this, but my recollection was a statement that you gave

5       to the police was that you feigned like you were worried

6       that T.H. might come and hurt you because he had a gun or

7       something, something like that.  So you clearly gave some

8       false information to the deputy sheriff or whoever it was

9       that came to talk to you; correct?

10                      THE DEFENDANT:  That is correct.

11                      THE COURT:  And the reason you did that was to

12      throw him off the scent, or throw them off the scent, to

13      protect your daughter from being arrested, prosecuted and

14      punished for what she had done to T.H.; correct?

15                      THE DEFENDANT:  Correct.

16                      MS. STERLING:  We're satisfied, Your Honor.

17          Thank you.

18                      THE COURT:  Okay.  And, Ms. Green, I am so

19      glad that we, you know, took the time because I just don't

20      want there to be any possibility of people talking past each

21      other.  I believe you have now admitted to the elements of

22      the offense her, and without needlessly, you know, admitting

23      to other things that might -- there may be some other

24      relevant conduct or something that comes up at sentencing,

25      which isn't necessarily part of the plea here today.

1           And we can talk about that at a later time when it

2     comes time for sentencing; right?  We've covered what we

3     need to cover here today?

4                     MS. STERLING:  Yes, Your Honor.

5                     THE COURT:  Okay.  So, with that,

6     Mr. Friedman, are you satisfied with the factual basis for

7     the plea that we've obtained at this point?

8                     MR. FRIEDMAN:  I am, Your Honor.

9                     THE COURT:  Do you want to make any

10    corrections or additions or anything to my ineloquent

11    attempt to satisfy the elements there?

12                    MR. FRIEDMAN:  No, Your Honor.  I think you've

13    set them out as needed.  I think Ms. Green understands them.

14    She's accepted them, and I am comfortable with her entering

15    what I anticipate to be a guilty plea shortly.

16                    THE COURT:  Well, that brings us to the

17    question.

18         Ms. Green, what is your plea to Count 6 of the

19    indictment, which is, to be clear, the only count in the

20    indictment in which you are named?  What is your plea?

21                    THE DEFENDANT:  I plead guilty, Your Honor.

22                    THE COURT:  Did anyone threaten you to cause

23    you to say that to me just now?

24                    THE DEFENDANT:  No, Your Honor.

25                    THE COURT:  Did anyone promise you anything to

1    get you to say that to me just now?

2                    THE DEFENDANT:  No.

3                    THE COURT:  Did you tell me that you are

4    guilty of that charge because you are, in fact, guilty of

5    that charge?

6                    THE DEFENDANT:  Yes, Your Honor.

7                    THE COURT:  Since you acknowledge that you

8    are, in fact, guilty of the offense set forth in Count 6 of

9    the indictment, relying upon the answers given by you here

10   in court under oath and in the presence of the members of

11   the public and seated next to your attorney, and in reliance

12   upon the remarks of counsel for both sides, I hereby make or

13   renew the following findings:

14        I find the defendant is competent; I find she had the

15   assistance of able counsel; I find she was advised of her

16   constitutional and trial rights, which are being waived

17   knowingly and voluntarily; I find that the plea itself was

18   made knowingly and voluntarily, with an understanding of the

19   charge, an understanding of the penalties and the effect of

20   such a plea, and upon an adequate factual basis.

21        Accordingly, at this point, I will accept your plea of

22   guilty, Ms. Green.  I will adjudicate you guilty as charged

23   in Count 6 of the indictment.

24        I will immediately refer the matter to the United

25   States Pretrial and Probation Office for the preparation of

1     a presentence investigation report.

2          Sentencing will take place in this case on February 23

3     at 1:30 p.m., so 2-23 at 1:30.  I want counsel here

4     15 minutes early at 1:15 for a prehearing conference.

5          Mr. Friedman, there will be a sentencing order that

6     I'll put on that will have the important dates along the

7     way; so first disclosure of the presentence investigation

8     report, time for objections, time for any presentence

9     memoranda that you might want to file, whatever all you want

10    to have, and that will all be spelled out in the order.

11                    MR. FRIEDMAN:  Very good.

12         And, Your Honor, you said what time, I'm sorry, on

13    that day?

14                    THE COURT:  The sentencing itself will be 1:30

15    p.m. on February 23rd.

16         Now, if something comes up between now and then and

17    that's somebody's spring break or something and we need to

18    adjust that, you and Ms. Sterling Ms. Baeppler just call my

19    chambers and we can move that if we need to, but for right

20    now, that's when I'm scheduling it.

21         Ms. Green, it's important to me that you cooperate

22    with the probation officer who prepares that presentence

23    investigation report.  I told you, just as we were getting

24    started today, that your right to counsel stays with you.

25    Your right to counsel certainly includes that meeting with

1    the probation officer.  In other words, you certainly have

2    the right to have your attorney with you.  If the probation

3    officer is doing it in person, have your attorney there with

4    you in person, if it's done by video, if you guys want to

5    participate -- however it happens, you have the right.  I'm

6    not telling you you have to have your attorney there -- if I

7    were you, I probably would -- but you certainly have the

8    right to.  Okay?  But nevertheless, it is important to me

9    that you cooperate with that probation officer, because if

10    you don't, that's going to get called to my attention, and

11    that's going to place in jeopardy one of the big mitigating

12    factors under the guidelines.  It's called acceptance of

13    responsibility, which means it is points that are taken off

14    because someone accepts responsibility for what they did.  I

15    think you place that in jeopardy if you refuse to cooperate

16    with the probation officer who prepares the report.

17        So you've been released.  Judge Clay, as I recall, put

18    you out on pretrial release with a signature bond, I

19    believe, and -- actually, no, it's a cash bond.  It was

20    land, and then we swapped -- I remember now -- we swapped

21    the land for cash.  So you've got a $100,000 cash bond on

22    file with us.

23        I'm inclined -- being unaware of any violations of her

24    pretrial release, Ms. Sterling, I'm inclined to continue

25    that at this juncture.

1          MS. STERLING:  No objection.

2          THE COURT:  Okay.  So even though it was

3    called pretrial release, and we're not going to have a trial

4    at this point, I'm going to continue the exact same terms

5    and conditions which have been governing your release in

6    this case, Ms. Green.  The same rules are going to stay in

7    effect.  Let's just say they're going to stay in effect

8    until someone tells you they are not in effect anymore, and

9    I'm not doing that today.  Okay?  So the same bad things can

10   happen if you violate those terms and conditions, but I have

11   no problem with continuing on with the status quo as it has

12   been.  So you'll still be under the supervision, however

13   loose or tight that is, with a Pretrial Services' officer

14   who's been supervising you.

15        Ms. Sterling, are you satisfied with the thoroughness

16   and adequacy of the explanation of rights and the acceptance

17   of response -- the acceptance of the factual basis, and

18   ultimately the knowing and voluntary nature of the plea I

19   obtained here today?

20          MS. STERLING:  Yes, Your Honor.

21          THE COURT:  And, Mr. Friedman, are you

22   satisfied that I have thoroughly and adequately explained

23   your client's rights to her; that she has knowingly and

24   voluntarily waived those rights; and that she has, in fact,

25   knowingly and voluntarily and intelligently entered a plea

1    of guilty here today to Count 6 of the indictment?

2                    MR. FRIEDMAN:  Very much so, Your Honor.

3         Thank you.

4                    THE COURT:  And perhaps most important

5    question of the day, Ms. Green, and specifically directed

6    towards what happened with Mr. Friedman and his wife outside

7    the traffic court in Cleveland Heights, I want to know, did

8    you understand every single thing that just happened here?

9                    THE DEFENDANT:  Everything that was important,

10   I think.

11                   THE COURT:  No, no.

12                   THE DEFENDANT:  I did, Your Honor.  I

13   understood.

14                   THE COURT:  You understood everything that

15   happened here; correct?

16                   THE DEFENDANT:  I did.

17                   THE COURT:  Okay.  Then we will be adjourned.

18                   COURTROOM DEPUTY:  All rise.

19                       (Proceedings concluded)

20                            -   -   -

21                  **C E R T I F I C A T E**

22        I certify that the foregoing is a correct transcript
     of the record of proceedings in the above-entitled matter
23   prepared from my stenotype notes.

24        */s/ Stacey L. Kiprotich            12/4/2023_*
          STACEY L. KIPROTICH, RMR, CRR              DATE

25